**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-1565-WJM-STV

SKRATCH LABS LLC, a Colorado limited
liability company,

     Plaintiff and Counterclaim Defendant,

          v.

DELIVERY NATIVE, INC., d/b/a Scratch
Kitchen, a Delaware Corporation,

      Defendant and Counterclaim Plaintiff.

---

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF DELIVERY NATIVE, INC.'S
OPPOSITION TO PLAINTIFF/COUNTERCLAIM-DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS**

Defendant and counterclaim-plaintiff, Delivery Native, Inc., submits the following memorandum and points of authorities in opposition to plaintiff and counterclaim-defendant, Skratch Labs, LLC's ("Plaintiff"), motion to dismiss Delivery Native's non-infringement counterclaim and motion to strike Delivery Native's trademark invalidity allegations.

## INTRODUCTION

This case asks the Court to resolve the scope of Plaintiff's purported trademark rights in offering edible items being made from "scratch."  Despite being a manufacturer that focuses on sports nutrition supplements, Plaintiff seeks to extend those claimed rights to any food-related good or service.  Plaintiff fails to acknowledge, though, that businesses marketed the common idiom "from scratch" long before Plaintiff claims any right to the "scratch" phrase.  Delivery Native's allegations and counterclaims seek to narrow Plaintiff's overreaching grab at trademark rights and ensure against Plaintiff's arbitrary enforcement against all of Delivery Native's products and services.

Plaintiff lodged its Complaint for ownership of the SCRATCH KITCHEN trademark against Delivery Native.  Plaintiff vaguely alleged Delivery Native's business model to suggest it is a competing restaurant.  *See* Dkt. 1, ¶ 19 ("Defendant Delivery Native offers for sale, and sells food, food delivery and catering services . . .").  In fact, the parties offer completely different goods and services.  Delivery Native uses the SCRATCH KITCHEN mark with a software platform for consumers to order delivery of separately branded products.  Dkt. 15, ¶ 4.  Plaintiff uses its SKRATCH LABS mark to sell powdered drink mixes for professional cyclists.  Dkt. 24, ¶¶ 15, 100.  Even after mischaracterizing Delivery Native's business in the Complaint, Plaintiff admitted it is aware of many restaurants using SCRATCH KITCHEN marks but has not enforced

1

any purported rights against them. *Id.*, ¶¶ 130, 134, 136, 149-52, 154-55, 161-64, 169, 171, 173, 175, 177, 179, 181-82, 184-85, 187-88. Plaintiff even admits that it has failed to enforce against other SCRATCH KITCHEN marks that it knows in Colorado. *Id.*, ¶¶ 138-39, 141-42, 157, 159.

      To curb Plaintiff's overreaching enforcement of its weak marks, Delivery Native asserted counterclaims for declaratory judgment of non-infringing use and cancellation of Plaintiff's asserted trademark registrations. Dkt. 15. In support of these counterclaims, Delivery Native supplied critical facts about the differences between the parties' goods and services, marks, markets, consumers, and laid out the crowded field of third-party marks. *Id.*, ¶¶ 15-118, 126-209, 246-250. Delivery Native's counterclaims also identify key legal issues, such as a declaration under 15 U.S.C. § 1119 that Delivery Native's trademark applications can proceed to registration, and adjudication of the limited scope of Plaintiff's claimed trademark rights to ultimately settle the legal relations, rights, and duties of the parties—even if Plaintiff should decide to dismiss its Complaint. *Id.* ¶¶ 122-239, 253-277, 287-296, 298-306, Prayer for Relief. Finally, Delivery Native questioned the truth of several of Plaintiff's verbatim public statements within a series of invalidity allegations. *See*, *e.g.*, *id.*, ¶ 256 ("Delivery Native believes and therefore alleges that Plaintiff has not tested whether its Wellness Hydration Drink Mix is 'proven to reduce the risk of cholera.'"); *id.*, ¶ 256 ("Delivery Native believes and therefore alleges that Plaintiff has no basis for its claim that its hydration mixes have 'all of the sodium, potassium, and zinc kids (and adults need)'"). Delivery Native paired Plaintiff's false statements with quoting customer's reviews impacted by the falsity. *Id.*, ¶ 277 ("Plaintiff's hydration mix was reviewed by a customer on Amazon who stated, 'I get an upset stomach every time I use this stuff.'").

After filing its answer to Delivery Native's Counterclaim Complaint responding to nearly all allegations,[1] Plaintiff now moves to dismiss one of Delivery Native's counterclaims for declaratory relief under the guise of redundancy. Dkt. 23, at 3. But this counterclaim provides the full picture of the parties' dispute, raises legal issues and claims for relief beyond those in Plaintiff's Complaint, and provides fundamental legal and factual questions that promote resolution of the broader dispute between the parties. Plaintiff also moves to strike Delivery Native's invalidity allegations, arguing Delivery Native's use of direct quotations from Plaintiff are immaterial and scandalous. *Id.*, at 2. Aside from Plaintiff's failure to meet basic standards of a motion to strike under Rule 12 of the Federal Rules of Civil Procedure, these allegations of Plaintiff's unlawful use directly support Delivery Native's cancellation counterclaim.

For these reasons, the Court should deny Plaintiff's motion to dismiss and strike in its entirety.

## ARGUMENT

A. **Delivery Native's non-infringement counterclaim is sufficiently pleaded, and the court should exercise its discretion in hearing the declaratory judgment counterclaim because it affords relief from uncertainty.**

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of

---

[1] In its answer, Plaintiff refused to properly respond to Delivery Native's attempt to delineate the scope of Plaintiff's vague claims. For example, Plaintiff failed to admit what its best-selling product is. Dkt. 24, ¶ 15. Similarly, when Delivery Native alleged basic facts like "Plaintiff is not a restaurant," Plaintiff refused an admission and responded with the non-sequitur, "Skratch Labs states that it is a Limited Liability Company." *Id.*, ¶ 25. As a result of failing to give adequate answers and baseless denials, Plaintiff is forcing Delivery Native to seek more discovery on basic questions about the scope of Plaintiff's claimed trademark rights and how it is asserting those rights against Delivery Native. Plaintiff's actions reinforce the need for Delivery Native's declaratory judgment counterclaims.

3

justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). In reviewing a motion to dismiss, the court must "accept all well-pleaded facts as true and view them in the light most favorable" to the party asserting the counterclaim. *Jordan–Arapahoe, LLP v. Bd. of Cnty. Comm'rs,* 633 F.3d 1022, 1025 (10th Cir. 2011).

Additionally, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ." 28 U.S.C. § 2201(a). The Tenth Circuit has identified the following factors to consider when determining whether to exercise jurisdiction over a declaratory judgment claim:

1) whether the declaratory action would settle the controversy;

2) whether it would serve a useful purpose in clarifying the legal relations at issue;

3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*";

4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

5) whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994); *Prograde Ammo Grp. LLC v. Perry*, No. 14-CV-00884-PAB-MEH, 2015 WL 1064266, at *3 (D. Colo. Mar. 9, 2015).

Each *Mhoon* factor weighs in favor of maintaining Delivery Native's counterclaim for declaratory relief. Delivery's Native's counterclaim should proceed for two reasons central to

4

the purpose of declaratory relief: (1) it will allow this Court to completely resolve the controversy between the parties and remove all uncertainty regarding the parties' rights and obligations, ensuring that those issues are resolved regardless if Plaintiff decides to withdraw the original claim; and (2) it ensures Delivery Native's distinct requests for relief are adjudicated, such as a determination of the limited scope of Plaintiff's claimed trademark rights, and a declaration under 15 U.S.C. § 1119 that Delivery Native's trademark applications can proceed to registration. Accordingly, the Court should deny Plaintiff's motion to dismiss Delivery Native's counterclaim.

### 1. Only Delivery Native's non-infringement counterclaim would completely settle the controversy.

The first *Mhoon* factor supports Delivery Native's non-infringement counterclaim because it seeks to determine the complete scope of trademark rights covering Plaintiff's and Delivery Native's products and services. And only Delivery Native's counterclaim prevents successive litigation.

Plaintiff's Complaint mischaracterizes Delivery Native's products and services. Rather than addressing what Delivery Native actually offers, Plaintiff's claims focus on a narrow, vague, and inaccurate depiction of Delivery Native's SCRATCH KITCHEN brand as a simple restaurant and catering company. *See* Dkt. 1, ¶ 19 ("Defendant Delivery Native offers for sale, and sells food, food delivery and catering services . . ."); Dkt. 1, ¶ 27 (". . . Delivery Native began promoting and selling food, snacks, catering and mobile food services under the mark "Scratch Kitchen."). Plaintiff's claims make no mention of Delivery Native's software services or larger platform to offer third parties a venue through which they can sell their food and non-food products. The counterclaim fills these gaps. *See* Dkt. 15, ¶ 4 ("Delivery Native does not

5

sell food branded as Scratch Kitchen.  Rather, it is a software platform.  It is a virtual food hall and food delivery service.").  Only the counterclaim addresses differences in the parties' products and services.  *See, e.g., id.*, ¶ 53 ("Delivery Native believes and therefore alleges that Plaintiff does not offer same day-meal delivery under its SKRATCH LABS marks."); *id.*, ¶ 62 ("Delivery Native believes and therefore alleges that Plaintiff does not offer software as a service (SAAS) under its SKRATCH LABS marks."); *id.*, ¶ 63 ("Delivery Native believes and therefore alleges that Plaintiff's primary products, such as its powder mixes, are meant to be consumed during or after exercise.").  And only the counterclaim allows for a declaration under 15 U.S.C. § 1119 that Delivery Native's trademark applications can proceed to registration.  *See, e.g., id.*, Prayer for Relief at G.  Delivery Native seeks a declaratory judgment that all its uses of SCRATCH-based marks—not just those limited uses claimed in Plaintiff's Complaint—do not infringe on any rights Plaintiff has in its marks.

Plaintiff's vague and overreaching assertion of trademark rights is also only addressed by the counterclaims.  Implicitly acknowledging the weakness in its marks, Plaintiff has admitted that it does not challenge other businesses' uses of a SCRATCH KITCHEN mark—including in the restaurant space.  *See* Dkt. 24, ¶¶ 130, 134, 136, 149-52, 154-55, 161-64, 169, 171, 173, 175, 177, 179, 181-82, 184-85, 187-88.  Plaintiff has offered no reason why it pursues sweeping trademark rights specifically against Delivery Native while other businesses go unchecked.  Nor has Plaintiff explained how its claimed sports nutrition products relate to fresh food delivery, software services, or all food-related services for SCRATCH, SKRATCH, or KITCHEN based marks.  *See* Dkt. 1.  Delivery Native needs a final determination of the parties' rights and obligations and the non-infringement counterclaim serves to clarify and settle the boundaries of

6

Plaintiff's vaguely claimed rights over SCRATCH, SKRATCH, or KITCHEN based marks.

Finally, Delivery Native's counterclaim prevents Plaintiff from engaging in "cut and run" litigation tactics. Plaintiff has already shown that it uses threats of litigation to bully others into changing their long-standing and non-confusing use of a SCRATCH mark. A hallmark of these tactics is to run from litigation when a plaintiff faces a defendant that will stand up to their overreach. Delivery Native needs protection against future, similar litigation even if Plaintiff decides to dismiss the Complaint. *See, e.g.*, *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-CV-3012-WJM-NYW, 2016 WL 8416760, at *7 (D. Colo. July 13, 2016) (Martinez, J.) ("A plaintiff could decide to withdraw the original claim, but the defendant might nonetheless want declaratory judgment of non-liability, to remove any uncertainty going forward regarding the parties' rights and duties. Thus, even if United's ERISA claim is redundant of Plaintiffs' claims, the Court sees no reason at this stage to dismiss it."). It is time to end Plaintiff's threats completely now, rather than let them linger. The counterclaim solves this problem.

Delivery Native needs a final and complete determination of the parties' rights and obligations and the non-infringement counterclaim serves to clarify and settle the boundaries of Plaintiff's claims over SCRATCH, SKRATCH, or KITCHEN based marks, and the parties' products and services offered under the marks. Only the counterclaim supplies the full and critical facts that make resolution of the issues at an earlier stage of the case more likely and requests distinct relief of what products and services, if any, Plaintiff may enforce its marks against.

### 2. Delivery Native's non-infringement counterclaim serves useful purposes.

Since only Delivery Native's counterclaim can completely resolve the parties' dispute and the scope of their rights, it is not a "mirror image" of Plaintiff's Complaint. Courts regularly allow declaratory relief counterclaims to usefully adjudicate such claims. *See Prograde Ammo Grp.*, 2015 WL 1064266, at *3 (denying motion to dismiss defendant's non-infringement counterclaim because it asserted an independent case or controversy that would remain viable even after dismissal of plaintiff's counterclaim); *Am. Gen. Life Ins. v. Bagley*, No. 2:13-CV-00089-RJS, 2013 WL 5916824, at *5 (D. Utah Nov. 4, 2013) (denying a motion to dismiss defendant's counterclaim despite plaintiff's argument that it was a redundant mirror image counterclaim because the issues in plaintiff's complaint will not necessarily render defendant's counterclaim moot); *Colony Ins. Co. v. Glob. Power Generation Serv. Corp. of Fla.*, No. 17-CV-2690-EFM, 2018 WL 3861172, at *6 (D. Kan. Aug. 14, 2018) (denying motion to strike declaratory judgment counterclaim as redundant even though some overlap existed between plaintiff's complaint and defendant's counterclaim because the counterclaim presented distinct questions that the resolution of plaintiff's complaint may not address).

This Court, as well as other courts have declined to dismiss even so called redundant or "mirror image" counterclaims because there are sound litigation reasons for having them. In *Kissing Camels Surgery* for example, this Court denied a motion to dismiss a counterclaim for declaratory relief that a plaintiff argued was redundant. In denying the motion, the Court noted that in intellectual property cases, like the case at hand, "there are often sound litigation reasons to plead a mirror-image counterclaim (*e.g.*, the plaintiff alleges patent infringement while the defendant counterclaims for declaratory judgment of non-infringement)." *Kissing Camels*

*Surgery Ctr.,* 2016 WL 8416760, at *7 (Martinez, J.); *see also*, *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 779 F. Supp. 2d 671, 682-83 (E.D. Mich. 2011) (declining to dismiss "mirror image" counterclaim where plaintiff's claim for trade dress infringement was vague and defendants were entitled to counterclaim and declaratory judgment "to determine ... the scope of Plaintiff's claims") (internal quotations and citation omitted); *Am. Energy Corp. v. Am. Energy Partners*, LP, No. 2:13-cv-886, 2015 WL 881519, at *3 (S.D. Ohio Mar. 2, 2015) (declining to strike counterclaim and noting that courts consistently hold that declaratory judgment counterclaims are sufficiently independent of claims for infringement so as to avoid dismissal even where they are allegedly redundant).

    Despite these cases, Plaintiff argues Delivery Native's counterclaim serves no useful purpose because it is merely a "mirror image" of Plaintiff's Complaint. Dkt. 23, at 7. Not so. Delivery Native's declaratory judgment counterclaims determines the scope of the parties' rights and Plaintiff's vague claims. Plaintiff's Complaint never uses the words "software," or "platform" at all. By contrast, the counterclaim explains the full scope of Delivery Native's SCRATCH-based marks' uses and contrasts the unique service that Delivery Native markets separate from Plaintiff's goods. *See, e.g*, Dkt. 15, ¶¶ 32, 62 ("Delivery Native believes and therefore alleges that Plaintiff's products offered under its SKRATCH LABS marks are primarily not a complete meal"; "Delivery Native believes and therefore alleges that Plaintiff does not offer software as a service (SAAS) under its SKRATCH LABS marks."). The counterclaim permits determination of non-infringement beyond Plaintiff's limited allegations of infringing use for "food, food delivery and catering services." Dkt. 1, ¶ 19. And the counterclaim cabins Plaintiff's claimed trademark rights. *See, e.g.*, Dkt. 15, ¶¶ 53, 59, 63. As a

9

growing startup business with a dynamic product, Delivery Native wants to remove the uncertainty around Plaintiff's vague claims. Delivery Native's counterclaim shapes, sharpens, and manages the case.

### 3. The third, fourth, and fifth *Mhoon* factors also favor Delivery Native's counterclaim.

Plaintiff's motion contains no discussion of any issue related to the third, fourth, and fifth *Mhoon* factors, but they nevertheless support Delivery Native's counterclaim. The counterclaim is neither procedural fencing nor a "race to res judicata." There is no risk of friction between federal and state courts. And Delivery Native's counterclaim asserts independent and distinct assertions for relief, providing for an efficient way to adjudicate all controversies between the parties. *See* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1406 (3d ed. 2020 update) ("[declaratory judgment counterclaims] often may be an efficient way to adjudicate all the controversies between the parties in one proceeding.").

Accordingly, the Court should deny Plaintiff's motion to dismiss Delivery Native's counterclaim because all the *Mhoon* factors support allowing the counterclaim to proceed.

### 4. Dismissing Delivery Native's non-infringement counterclaim at this early stage in litigation is premature.

Plaintiff's motion to dismiss Delivery Native's counterclaim is premature. Courts faced with this issue have held that the pleadings stage in litigation is too early to dismiss a counterclaim for declaratory relief given the difficulty of determining at this stage whether a counterclaim is redundant or serves a useful purpose. *See Am. Gen. Life Ins.*, 2013 WL 5916824, at *3 (holding dismissal of defendant's counterclaim early in litigation was unwarranted and premature); *Pettrey v. Enter. Title Agency, Inc.,* No. 1:05-CV-1504, 2006 WL 3342633, at *3

(N.D. Ohio Nov. 17, 2006) ("Because it may be difficult in most instances to determine whether counterclaims are identical early in litigation, 'the safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action.'") (citing *Wright, Miller & Kane*, 6 Federal Practice & Procedure 2d § 1406).

The Court should deny Plaintiff's motion because dismissing the non-infringement counterclaim this early in litigation has the potential to substantially prejudice Delivery Native, while dismissing one of Delivery Native's two counterclaims would serve no interests of judicial economy. Plaintiff answered the majority of Delivery Native's counterclaim and faces little marginal effort in defending a few additional allegations that they see as redundant. Because the potential prejudice Delivery Native faces is high, while the prejudice and harm to Plaintiff in allowing the counterclaim to proceed is low or nonexistent, the Court should deny Plaintiff's motion. *See Am. Gen. Life Ins.*, 2013 WL 5916824, at *6 (finding the conclusion of denying plaintiff's motion to dismiss the counterclaim "supported by the lack of any notable prejudice cited by Plaintiff if Defendant's Counterclaim is permitted.").

Plaintiff's argument fails either way; either the counterclaim is a mirror image, in which there would be no loss of judicial economy resolving a similar claim, or the counterclaim raises independent facts that merit discovery and determination. This Court should not terminate Delivery Native's counterclaim on the pleadings.

**B.    Delivery Native's invalidity allegations are relevant, material, and pertinent to its trademark cancellation counterclaim; Plaintiff's motion to strike should be denied.**

Using direct quotations from Plaintiff's marketing, Delivery Native alleges that Plaintiff

11

has unlawfully used its mark and engages in false advertising. Dkt. 15, ¶¶ 253-77. Rather than address its unlawful use of its mark, Plaintiff now seeks to strike these allegations as being too scandalous. But these allegations support Delivery Native's counterclaim that Plaintiff's marks are invalid and do not warrant the extreme remedy of striking portions of a pleading.

In evaluating motions to strike, courts emphasize that Rule 12(f) motions "are a generally-disfavored, drastic remedy." *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997) (citing *United States v. Smuggler–Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993); *see* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2020 update)). "Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." *Sierra Club*, 173 F.R.D. at 285.

Courts further evaluate a motion to strike scandalous allegations using two standards. If the scandalous allegation is irrelevant, the court still only may strike those that "degrade [a party's] moral character, contain repulsive language, or detract from the dignity of the court." *Id.* If a scandalous allegation is relevant to the matter, the moving parting must make an additional showing that the allegations "go into unnecessary detail." *Id*. To prevail on any motion to strike under Rule 12(f), "a party must usually make a showing of prejudice." *Id.* (citing 5A Wright & Miller § 1382). Delivery Native's allegations are material, relevant, not scandalous, and not prejudicial.

> 1. **The invalidity allegations are material and relevant to Delivery Native's cancellation counterclaim.**

The allegations that Plaintiff's false advertising demonstrate unlawful use of Plaintiff's claimed marks support cancellation of its marks. Indeed, to maintain rights in a trademark, a

12

trademark's use in commerce must be lawful.  *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000) (requiring a party "to show the name was lawfully used in commerce" before granting trademark rights); *In re Morgan Brown*, 119 U.S.P.Q.2d 1350 (TTAB July 14, 2016) ("We have consistently held that, to qualify for a federal service mark registration, the use of a mark in commerce must be lawful.") (internal quotations omitted).

Here, Delivery Native alleges that Plaintiff's false advertising, (and the related false labeling and violation of federal and state regulations), renders its trademark use unlawful and that its rights in its claimed mark should be cancelled.  Dkt. 15, ¶¶ 253-77.  Specifically, Delivery Native alleges that Plaintiff's false advertising around the benefits of its products, including that it can cure cholera, is unlawful false advertising that supports cancellation of the mark.  *Id.*, ¶¶ 254-56.  Delivery Native also alleges the falsity of Plaintiff's labeling and nutrition claims while using its marks.  *Id.*, ¶¶ 256-59, 261-69.  And Delivery Native alleges that Plaintiff lost rights in its mark through the failure to comply with FDA and sugar tax regulations.  *Id.*, ¶ 304.

Plaintiff has not met the exceptionally high burden of showing that these invalidity allegations "have no possible bearing on the controversy."  *See Sierra Club*, 173 F.R.D. at 285.  Plaintiff has even conceded that the invalidity claims are relevant, as it has answered that part of the counterclaims.  But Plaintiff does not want to stand behind, or address, its unlawful use of its mark.  Plaintiff's reluctance to admit its own statements and defend its actions does not support a motion to strike.

13

### 2. Delivery Native's allegations are neither scandalous nor prejudicial.

Even if the unlawful use allegations are not directly relevant, Plaintiff's motion has not met the other conditions required to strike a pleading. Plaintiff has neither shown the allegations are scandalous nor prejudicial. Irrelevant material still requires a "showing of prejudice." *See Sierra Club*, 173 F.R.D. at 285. Negative public opinion is not tantamount to prejudice; "adverse publicity . . . is not, in itself, a reason to strike uncomfortable allegations." *McGill v. Correctional Healthcare Cos.*, No. 13–cv–01080–RBJ–BNB, 2014 WL 2922635, at *6 (D. Colo. Jun. 27, 2014). Nor is party prejudiced only by defending some immaterial allegations. *See Rawson v. Sears Roebuck & Co.*, 585 F. Supp. 1393, 1397 (D. Colo. 1984) ("[P]laintiff's briefs are immaterial and impertinent within the meaning of Rule 12(f). Yet, defendant must demonstrate that it will be unduly prejudiced if these allegations are not stricken.").

Plaintiff made no attempt at a factual showing of prejudice. Its motion lacks any evidentiary declaration. Instead, Plaintiff makes a single argument about its claimed prejudice: namely that Delivery Native's claims "prejudice Skratch Labs by degrading its reputation" that "will inevitably affect public opinion." Dkt. 23, at 9-10. Plaintiff's conclusory argument, without any factual basis, does not support a claim of scandal or prejudice.

More so, Plaintiff's fears of having to defend its actions is not a reason to grant a motion to strike. This is because the fact that litigation may affect public opinion does not demonstrate prejudice. *McGill*, 2014 WL 2922635, at *6. And many of Delivery Native's allegations merely repeat public statements from Plaintiff and its customers, like "Plaintiff markets its Wellness Hydration Drink Mix as 'proven to reduce the risk of cholera,'" and "Plaintiff's hydration mix was reviewed by a customer on Amazon who stated, 'I get an upset stomach every time I use this

14

stuff.'" Dkt. 15, ¶¶ 255, 277.  Additionally, irrelevant allegations cannot be scandalous unless "they degrade [a party's] moral character, contain repulsive language, or detract from the dignity of the court." *See Sierra Club*, 173 F.R.D. at 285.  Here again, the mere repetition of public statements by Plaintiff and its customers and the allegation of the falsity of Plaintiff's advertising fail to degrade Plaintiff's "moral character." *See id.*  If so, Plaintiff's position would render every false advertising claim scandalous.

Plaintiff has failed to show that Delivery Native's allegations about Plaintiff's unlawful use of its mark are irrelevant, scandalous, or prejudicial.  Plaintiff should answer the allegations about Plaintiff's unlawful use of its mark, and the court should deny Plaintiff's motion to strike.

## CONCLUSION

The Court should deny Plaintiff's motion to dismiss Delivery Native's non-infringement counterclaim and motion to strike Delivery Native's invalidity allegations.  If this Court is inclined to grant either of Plaintiff's motions, Delivery Native respectfully requests leave to amend its counterclaim to add further allegations or claims regarding Plaintiff's false advertising and the need to clarify the parties' trademark rights.

Dated: September 16, 2020

Respectfully submitted,

*s/ Eric Ball*
Eric Ball
eball@fenwick.com
Irene Aguirre
iaguirre@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500

Garner Kropp
gkropp@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Attorneys for Defendant and Counterclaim-Plaintiff*,
*DELIVERY NATIVE, INC. d/b/a SCRATCH KITCHEN*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of September 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record in this case.

*s/ Eric Ball*
Eric Ball